```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                CIVIL NO. 21-1971(DSD/HB)
```

Mary Freiermuth,

        Plaintiff,

v.                                             **ORDER**

St. Paul Electrical Workers Health
Plan, by and through the Board of
Trustees of the St. Paul Electrical
Workers Health Plan, et al,

        Defendants.

    Markus C. Yira, Esq. and Yira Law Office, LTD, P.O. Box 518, Hutchinson, MN 55350, counsel for plaintiff.

    Amy L. Court, Esq. and McGann Shea Carnival Straughn & Lamb, CHTD, 800 Nicollet Mall, Suite 2600, Minneapolis, MN 55402, counsel for defendants.

This matter is before the court upon the motions to dismiss by defendants St. Paul Electrical Workers Health Plan, by and through the Board of Trustees of the St. Paul Electrical Workers Health Plan; Wilson-McShane Corporation, as Plan Administrator of the St. Paul Electrical Workers Health Plan; and Ronald G. Ethier, as a fiduciary of the St. Paul Electrical Workers Health Plan. Based on a review of the file, record, and proceedings herein, and for the following reasons, the motions are granted.

BACKGROUND

This Employment Retirement Income Security Act (ERISA) dispute arises out of plaintiff Mary Freiermuth's participation in the St. Paul Electrical Workers Health Plan (Plan). The Plan provides benefits, including health and welfare benefits, derived from employer contributions and self-payments. Compl. ¶¶ 4-5, 10. At all times relevant to this dispute, Freiermuth has been an eligible plan participant. Id. ¶ 11.

In December 2020, Freiermuth was seriously injured in a car accident. Id. ¶ 12. In February 2021, Freiermuth submitted a claim to the Plan for certain medical expenses not fully covered by her no-fault automobile insurance. Id. ¶¶ 12-13. The Plan conditioned payment on both Freiermuth and her attorney signing a Subrogation/Reimbursement/Lien Agreement (Subrogation Agreement). Id. ¶ 14; id. Ex. A. The purpose of the Subrogation Agreement is to allow the Plan to seek repayment of monies paid or owed to the claimant from a third party responsible for the harm, and to prevent double recovery. See Lasley Decl. Ex. A, at 57-60.[1] Freiermuth signed the Subrogation Agreement, but her attorney refused to do so, arguing that it was unethical. Compl. ¶¶ 15-18. Freiermuth's attorney also argued that requiring him to sign

---

[1] The court may consider the Plan document, as it is embraced by the pleadings. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).

the Subrogation Agreement breached the Plan's fiduciary duty to Freiermuth. Id. ¶ 19. The Plan ultimately denied Freiermuth's claim based on her attorney's refusal to sign the Subrogation Agreement. See id. ¶ 16. Freiermuth alleges that she has been unable to pay her medical bills due to the coverage denial, which has negatively affected her credit rating. Id. ¶ 30. She did not appeal the Plan's denial of benefits.

On September 2, 2021, Freiermuth commenced this action alleging that the Plan wrongfully denied her benefits in violation of ERISA, 29 U.S.C. § 1133 (Count I), and that the Plan breached its fiduciary duty by failing to provide her with the benefits she is entitled to (Count II). Freiermuth seeks payment of the medical benefits at issue, an injunction prohibiting the Plan from requiring her attorney to sign the Subrogation Agreement, damages, and attorney's fees and costs. Defendants now move to dismiss.

## DISCUSSION

### I. Standard of Review

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual

3

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

## II.  Wrongful Denial of Benefits Claim

In Count I, Freiermuth alleges that defendants wrongfully denied her benefits by conditioning payment on her attorney's execution of the Subrogation Agreement. Defendants argue that this claim should be dismissed because (1) Freiermuth failed to exhaust her administrative remedies, and (2) requiring an attorney signature on a subrogation agreement is legally permissible.

### A.  Exhaustion Requirement

Defendants argue that Freiermuth is required to file an administrative appeal with the Plan's trustees before she may file a lawsuit. There is no dispute that Freiermuth did not appeal the denial of her claim. She contends that she was excused from filing an appeal because it would have been futile, as the trustees would have upheld the claim denial.

4

There is no dispute that ERISA requires exhaustion of administrative remedies "as a prerequisite to suit" when exhaustion is required under an ERISA contract and "there is notice and ... no showing that exhaustion would be futile." Wert v. Liberty Life Assurance Co., 447 F.3d 1060, 1065 (8th Cir. 2006) (citations and quotation omitted). "The futility exception is narrow — the plan participant 'must show that it is certain that [her] claim will be denied on appeal, not merely that [she] doubts that an appeal will result in a different decision.'" Brown v. J.B. Hunt Transp. Servs., Inc., 586 F.3d 1079, 1085 (8th Cir. 2009) (quoting Zhou v. Guardian Life Ins. Co. of Am., 295 F.3d 677, 680 (7th Cir. 2002)).

Freiermuth contends that any appeal would "certainly have been denied" because the trustees would have also determined that her attorney needed to sign the Subrogation Agreement. ECF No. 23, at 8. But mere speculation that the Plan will deny a claim on appeal does not establish futility. Goewert v. Hartford Life & Accident Ins. Co., 442 F. Supp. 2d 724, 730 (E.D. Mo. 2006). Otherwise, nearly all administrative appeals would be futile. Id. Nothing prevented Freiermuth from presenting the arguments she relies on here to the administrative appeal board, and the court will not speculate as to what the outcome would have been had she done so. Indeed, the Plan provides that the "Trustees will give no deference to the initial benefit decision[,]" and

5

that the "Trustees will consider all comments, documents, records, and other information ... submitted relating to the claim, without regard to whether such information was submitted or considered in the initial benefit decision[.]" Lasley Decl. Ex. A, at 26. Under these circumstances, the court determines that it would not have been futile for Freiermuth to exhaust the Plan's administrative procedures.

    **B.**    **Enforceability of Subrogation Agreement Requirement**

Even if Count I were properly before the court, it lacks merit. Freiermuth argues that the requirement that her counsel sign the Subrogation Agreement is unethical and thus unenforceable. The thrust of her argument is that conditioning the payment of benefits on the requirement that her attorney sign the Subrogation Agreement creates a conflict of interest for the attorney. Freiermuth relies on numerous state ethics opinions to support her position.[2]

According to Freiermuth, the ethics opinions establish that "[t]he consensus around the United States is that the proposed [Subrogation Agreement] is unethical, prohibited, and void as a

---

[2] Freiermuth specifically cites ethics opinions from ten states: Wisconsin, North Carolina, Vermont, Kansas, Arizona, Indiana, Illinois, Missouri, South Carolina, and Tennessee. See Compl. ¶¶ 20-29. The court was able to review all the ethics opinions except the Kansas opinion, which is not readily available. The court will assume that the Kansas opinion is in accord with the other opinions.

matter of public policy." Compl. ¶ 18. The court disagrees. Indeed, the ethics opinions are wholly irrelevant to the facts presented here, as they do not address subrogation agreements. Rather, the opinions discuss whether attorneys can be required to sign indemnification and hold harmless provisions in the context of a client settlement agreement.

The Wisconsin opinion, for example, addresses whether "standards of professional conduct preclude attorneys from proposing, demanding and/or entering into settlement agreements that include indemnification and hold harmless provisions binding an attorney to personally satisfy any unknown lien claims against the settlement funds or property[.]" Court Decl. Ex. D, at 1. The opinion concludes that the "primary ethical problem with conditioning a settlement agreement on a lawyer's becoming a guarantor against lien claims is that the lawyer's interests are placed clearly at odds with his or her clients." Id. As a result, the opinion prohibits attorneys from entering into such agreements. None of the opinions address whether an attorney is or should be ethically prohibited from signing a subrogation agreement. The opinions also lack persuasive value, as there is no apparent conflict in requiring an attorney to sign an agreement effectively prohibiting double recovery by the claimant and allowing the plan to recover payments paid or owed to the claimant by third parties.

Moreover, several courts, including the Eighth Circuit Court of Appeals, have acknowledged that ERISA-governed benefits providers, such as the Plan, may condition the payment of benefits on an attorney's execution of a subrogation agreement. See Kress v. Food Emps. Labor Rels. Ass'n, 391 F.3d 563, 568-69 (4th Cir. 2004) (upholding a similar subrogation requirement and rejecting the argument that requiring an attorney to sign a subrogation agreement is "unconscionable"); S. Council of Indus. Workers v. Ford, 83 F.3d 966, 969 (8th Cir. 1996) (recognizing that a "subrogation agreement is enforceable against an attorney who agrees with a client and a plan to honor the plan's subrogation rights"); see also Treasurer, Trs. of Drury Indus., Inc. Health Care Plan & Tr., 692 F.3d 888, 894 (8th Cir. 2012) ("A subrogation agreement between a client and an ERISA plan is only enforceable against a client's attorney if the attorney 'agrees with a client and a plan to honor the plan's subrogation right.'"); Cossey v. Assocs. Health & Welfare Plan, No. 4:02CV661, 2008 WL 276282, (E.D. Ark. Jan. 30, 2008) ("[I]t does not follow that the defendants acted arbitrarily and capriciously when they required the plaintiffs and their attorney to execute the Reimbursement-Subrogation Agreement and Disbursement Agreement prior to the processing of the plaintiffs' claims."). As a result, the court finds that the subrogation agreement requirement is valid and that

8

the Plan did not wrongfully deny benefits. Count I therefore must be dismissed for failure to state a claim.

### III. Fiduciary Duty Claim

Count II of the complaint alleges that the Plan fiduciaries breached their duties to Freiermuth by requiring her attorney to sign the Subrogation Agreement and by denying benefits when her attorney refused to do so. As discussed above, the Plan's subrogation requirement is enforceable. As a result, actions consistent with that requirement cannot serve as the basis for a breach of fiduciary duty claim. This claim is also dismissed.

### CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. The motions to dismiss [ECF Nos. 7, 16] are granted; and
2. The case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 15, 2022

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court